UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL MABINS,

        Petitioner,

                                  CASE NO. 2:07-CV-13755

v.                            JUDGE GERALD E. ROSEN
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

GREG MCQUIGGIN,

        Respondent.[1]

_____/


## REPORT AND RECOMMENDATION


*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    D.   *Sufficiency of Evidence (Claims I and II)* . . . . . . . . . . . . . . . . . . . . . . . . . 15
             1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
             2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
             a.   *Assault with Intent to Commit Murder* . . . . . . . . . . . . . . . . . . . 18
             b.   *Felon in Possession of a Firearm* . . . . . . . . . . . . . . . . . . . . . . . 20
             c.   *Possession of a Firearm during Commission of a Felony* . . . . . . 21
    E.   *Suppression of Evidence (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
             1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
             2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    F.   *Ineffective Assistance of Counsel (Claims III and IV)* . . . . . . . . . . . . . . . . . 30
             1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
             2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
             a. *Dismissal or Instructions Based on Suppression of Evidence* . 31
             b. *Mistrial Based on Complainant's Conduct* . . . . . . . . . . . . . . . 32
    E.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . 34

_____

[1]By Order entered this date, Greg McQuiggin has been substituted for Kenneth McKee as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Michael Mabins is a state prisoner, currently confined at the Straits Correctional Facility in Kincheloe, Michigan.

        2.      On December 13, 2003, petitioner was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On February 12, 2004, he was sentenced to concurrent terms of imprisonment of 9-15 years for the assault with intent to murder conviction and 2-5 years for the felon in possession conviction, as well as a preceding and consecutive two-year term of imprisonment for the felony firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      This court must either peremptorily reverse defendant-appellant's convictions or grant leave to appeal to determine whether his convictions for assault with intent to murder and felony firearm stand in violation of his state and federal due process rights where they are not supported by evidence sufficient to establish his guilt beyond a reasonable doubt.

        II.     This court must either peremptorily reverse defendant-appellant's convictions or grant leave to appeal to determine whether his convictions for possession of a weapon by a convicted felon and felony firearm stand in violation of his state and federal due process rights where they are not supported by evidence sufficient to establish his guilt beyond a reasonable doubt..

2

III.   This court must either peremptorily reverse defendant-appellant's convictions or grant leave to appeal to determine whether he was denied a fair trial by the negligent destruction of the complainant's police statement, and by his attorney's failure to move to dismiss or request an instruction based on the lost evidence.

IV.   This court must either peremptorily reverse defendant-appellant's convictions or grant leave to appeal to determine whether trial counsel was ineffective for failing to move for a mistrial after the complainant's meltdown during cross-examination after many admonishments to answer the questions posed to him, to watch his demeanor and to calm down.

The Michigan Court of Appeals found no merit to petitioner's claims and affirmed his conviction and sentence. *See People v. Mabins,* No. 260627, 2006 WL 1716724 (Mich. Ct. App. 2006) (per curiam).

4.   Petitioner, proceeding *pro se*, sought leave to appeal these four issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Mabins*, 477 Mich. 917, 722 N.W.2d 878 (2006).

5.   Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 23, 2007. As grounds for the writ of habeas corpus, he raises the same four claims he raised in the Michigan Court of Appeals and the Michigan Supreme Court.

6.   Respondent filed a response on March 14, 2008. He contends that petitioner's claims lack merit.

B.   *Background*

Petitioner's convictions arise from the non-fatal shooting of DeShawn Jefferson on January 14, 2003, near the intersection of East Hildale Street and Van Dyke Street in the City of Detroit. At petitioner's trial, the only witness prosecutor Odie Uddyback called was the nineteen-year-old complainant DeShawn Jefferson. Petitioner was represented by attorney Sterling Coleman, and

3

called no witnesses.

Before the trial began, it emerged that DeShawn Jefferson had made a statement to the police on the day of the shooting, that the statement had been recorded in writing, that petitioner's counsel had requested the statement, and that the statement was not provided to petitioner's counsel. The following exchange took place on the record before the trial began.

MR. COLEMAN: [T]here was a statement taken on the day of the shooting, and I'm just putting this on the record because investigator – tried to find it. Apparently he's tried to find it to no avail. There was a statement taken from the complaining witness on the day of the shooting. We don't have that statement. The only way I know about that statement is that there was an investigative deposition that was taken the next day that makes reference to that statement. We don't have that statement but the investigative subpoena or deposition does ask the complaining witness to read in part – at least, the missing statement. I don't know what also may have been contained. We certainly want that.

I think it's absolutely necessary for this matter but at the same time I'm prepared to proceed. I don't want to waive giving up – you know, I guess I'm between a rock and a hard place. If it's beneficial to my client I have to zealously look for it. We know about it, we've requested it. I don't know how else to deal with it, Judge, but other than place this on the record.

THE COURT: Okay, Prosecution.

MR. UDDYBACK: Your Honor, as Counsel stated, the contents of whatever statement was taken from the complaining witness was recorded in part in the investigative subpoena. The identification description is captured in that statement. This case rises and falls, I believe, and we're not speaking for the defense counsel, on the complainant being able to identify the defendant. Clearly in that investigative subpoena identification was made all up and down regarding the shooter. So, I don't think the defense is at a disadvantage because they have this memorialized and it has been made available to Counsel as he indicated. So, I don't think he's at a disadvantage to proceed for trial, your Honor.

THE COURT: Who took the statement?

MR. UDDYBACK: The prosecutor's office responded to a non-fatal shooting had [sic] the complaining witness sworn and deposed, asking a series of questions, and I think it might be 45, 50 pages asking about who did it, where was it, why did it happen, etc., etc. Counsel has it. We have no objection if he uses it for impeachment matters. As far as any other use of it, the only way I can see it would be beneficial to him, since it's no exculpatory statements in that investigative subpoena, clearly, you know, we have no objection if it's used for impeachment purposes. That is to challenge the complainant's account of who shot him and what that person looked like.

4

Trial Tr., Vol. II, at 3-5. The trial court gave petitioner's counsel permission to refer to the entire investigative subpoena during trial, but otherwise no remedy was requested or granted regarding the missing statement. *Id.* at 6.

When DeShawn Jefferson was cross-examined at the December 11, 2003 preliminary hearing, he testified regarding the contents of the missing statement.

> Q: When you initially talked to the police officer about who shot you, did you give that officer a description of the person who shot you?
> A: Yes, I did, I gave him an (inaudible) description of him.
> Q: A description, I'm sorry?
> A: When I first got shot I had gave him a description of him but not him but another guy that looks just like him.
> Q: Okay, but you gave the officer a description of the person who shot you?
> A: Right, which is the same person.

Prelim. Exam. Tr., at 17-18.

The only witness at the trial was complainant DeShawn Jefferson. The complainant, who did not give his testimony voluntarily, was subjected to direct examination, cross examination, redirect examination, recross examination, and a second redirect examination.

On direct examination by Mr. Uddyback at trial, DeShawn Jefferson described the circumstances of the shooting. He testified that he was driving near the intersection of East Hildale Street and Van Dyke Street when an unknown person blocked his path, and that the shooter without provocation or any discernible reason emerged from behind a house and emptied a handgun's magazine into the back of complainant's new car, striking the complainant in the shoulder.[2] *See* Trial Tr. II, Vol. II, at 22-24. DeShawn Jefferson identified Petitioner as the person who shot him. *Id.* at

---

[2]In reaching its sentencing decision, the trial court emphasized that "the complaining witness said that he was seated in a car and he was face-to-face with the person who shot him" and "the Jury believed that." Sent. Tr., at 8. However, the testimony of the complaining witness unambiguously indicates that he was shot from behind, and that he only saw the shooter in the rear view mirror. *See* Trial Tr., Vol II, at 22-24.

21-22.

> Q: ... Would you explain what happened?
> A: I was driving down the street coming from the carwash and I got shot.
> Q: Okay. Now, is the individual who shot you here today?
> A: Yes.
> Q: And would you individual [sic] him by some object of clothing, something he might be wearing today?
> A: Yeah, Air Ones right here.
> Q: I'm sorry.
> A: I say my man right here. [sic]
> Q: All right, what's he wearing just for the record, what colors?
> A: Red and gray.

*Id*. Further questioning revealed that DeShawn Jefferson knew that it was petitioner who shot him because petitioner or a member of petitioner's family apologized to him in person for the shooting three weeks later when the complainant visited the area to purchase marijuana. *Id*. at 28; *see also* Prelim. Tr., at 25 (Jefferson testifying that petitioner "told me it was a mistaken identity and he was sorry").

DeShawn Jefferson testified that the matter only came to the attention of the police when he recognized petitioner as the shooter while both were incarcerated at the 11th Precinct police station in the city of Detroit eight months later. Trial Tr., Vol. II, at 31.

> Q: [H]ow did you see him?
> A: He was in the cell next to me.
> Q: And did you – what happened after you saw him?
> A: Well, they – it was a guy there – well, I tried to talk to Detective Muscat, he gave me a card to call him. Well, I talked to another guy and the other guy asked me why I didn't come to the lineup and all that, then I just told him that was him.
> Q: Okay. So, you told the police officer.
> A: Yes.
> Q: That what?
> A: That the guy shot me.
> Q: Okay. And did you give a description?
> A: Yeah, I been gave a description. [sic]

*Id.* at 31-32.

6

On cross examination, DeShawn Jefferson was agitated and uncooperative. He often answered questions that were not asked.

> Q: What street is that?
> A: They stay on the crack-house. They crack house on Hillsdale and Van Dyke where I got shot at, man.
> Q: I'm sorry –
> A: Exactly where I got shot. And I didn't know if that – the word on the street is that they all cousins and stuff like that, man, that's where I got that from. But do I know if they cousins or related, no. I don't know and I really don't even care.

*Id*. at 38. DeShawn Jefferson was confronted with his earlier testimony that he had identified the shooter as "Antoine."

> Q: Okay. 'Who's (sic) cousin?' 'The guy that shot me, Antoine.'
> A: Right. The word on the street is that that was his name at the time.
> Q: Was that your testimony –
> A: That's what I gave the officer, what I knew at the time, what was going on around the street.
> THE COURT: But you don't know that yourself?
> THE WITNESS: I didn't know if it was his name or not. I really don't care if it's his name. It could be his name, it could not be.

*Id*. at 40. The trial court intervened when, in response to a series of questions impeaching him with preliminary examination testimony that it was petitioner's relative and not petitioner himself who apologized to him for the shooting, DeShawn Jefferson verbally attacked petitioner's counsel.

> A: It was – both of 'em was there, man. You wasn't even there. Both of 'em was there. Ask him, he told me. Ask your client.
> THE COURT: Mr. Jefferson. Mr. Jefferson. You are in a court of law. Do you understand that you are in a business place.
> THE WITNESS: Yes.
> THE COURT: Okay, you're not outside of the courtroom. You're in the courtroom. You cannot attack the attorneys just because they're asking you questions. You listen to the question carefully and then you answer yes or no if you can answer yes or no, and then we'll be able to move through this more quickly. But, you cannot attack the attorneys because they're here doing a job asking you questions. Do you understand that?

7

THE WITNESS: Yes, ma'am.

*Id.* at 49-50. When Petitioner's counsel attempted to ask DeShawn Jefferson about the identities of other witnesses to the shooting, this exchange occurred.

> Q: Now at the time of the shooting you were talking to somebody else; am I correct? There was a white guy out there that you were talking to?
> A: I wasn't talking to him, man. Didn't it just say I just stopped in the middle of the street and he start blasting. You client right there. Here go the shell in my arm. Man, I don't even want to – excuse me, your Honor –
> MR. UDDYBACK: Your Honor, may I just instruct the witness. You only got a couple of minutes. Please, just calm down.
> THE WITNESS: I want to go home, man. I ain't got time for this.
> THE COURT: Well, let me say this. The witness has said on more than one occasion that he doesn't have time for this. We don't have time for it if you're not interested, all right.
> THE WITNESS: Right. I pointed him out –
> MR. UDDYBACK: Your Honor, and I did explain to him that he's not here under his own volition and if he were to leave I would have him arrested. Now that is how we got you here, almost, right?
> THE WITNESS: Right.
> MR. UDDYBACK: He did not want to be here, your Honor. There is a certain amount of things that have been going on that we are not party to and I just want this to be complete, your Honor.
> THE WITNESS: I don't never want to be here.
> THE COURT: Okay, we're here for this trial and this is his opportunity to tell the trier of fact what he knows, and if he doesn't want that opportunity then I'll dismiss this jury and we'll move forward.
> MR. UDDYBACK: Your Honor, I would ask that you appreciate at the onset I explained that –
> THE COURT: I'm trying. I'm trying to bear with the prosecution on this.
> MR. UDDYBACK: Right. And sir, please just remain calm and this will soon be over.
> THE COURT: All right. Let's try to finish this cross-examination.

*Id.* at 52-54.

Petitioner moved for a directed verdict on the grounds that the complainant's testimony was inherently incredible and that the complainant's behavior was prejudicial. *Id.* at 62. The trial court decided to take the motion under consideration pending a drug test of the complainant giving the

8

following reasons.

THE COURT: ... I have never seen a complainant, who in my opinion was under the influence of either drugs or alcohol or some other substance while he is testifying. But, it really appears that this complainant is – and I'm going to have him tested. I don't know if that's going to make my final decision regarding this directed verdict motion but I want him tested. So, how do we do that?

MR. UDDYBACK: Well, are you ordering it.

THE COURT: Yeah. However we do that here at the court. He's admitted that he always uses marijuana. I mean, that quality of evidence really cannot be admitted to a trier of fact. And, if he's under the influence of, especially illegal substances, now, then I want to know that because that's the way he behaved on the witness stand.

*Id.* at 63-64. The prosecutor vigorously opposed the order, arguing that the question of drug use went to credibility, which was for the jury, and that the complainant was in pain and without health insurance; petitioner's counsel did not argue during this long exchange. *Id.* at 64-67.

MR. UDDYBACK: And I appreciate your interest in whether or not this individual used drugs prior to testifying. Let's look at what happened. He's an 18 year old individual with no health insurance. And as I began opening statement -

THE COURT: I understand.

MR. UDDYBACK: I just want to make a record, your Honor. The system has failed him miserably in providing basic health care for this individual who was shot by, he says, this individual. So, he's left to try to self medicate. He's not a physician, he's not a pharmacist. He's just some little guy in some sad corner of Detroit. As I explained to the jury, I said look, this is going to be some street justice if we don't get this before you, and that's clearly what's going on. This individual and that individual had a mistake run-in because this individual thought he could take it out on somebody else so he apologized to this individual, but he wanted to kill somebody else, your Honor. And I don't think this case should rise and fall on that poor misguided individual in there ...

THE COURT: I still want this man tested.

MR. UDDYBACK: Okay. And I'm not trying to cut you off, your Honor. I do understand and appreciate. If it goes back that if you come to court high or whatever, these murder cases, that will sending a chilling effect on complainants that we drag in here and keep over night to get them to testify because we don't want the people to solve their issues out in the street. We want to put them up there, and if the jury says he's under the influence, he's high, he's drunk, or whatever, then so be it. That goes to weight and then they can decide whether to find the individual sitting in that seat guilty or innocent.

THE COURT: I haven't said that I'm going to grant the directed verdict

motion but I do want to have this complainant tested.

      MR. UDDYBACK: And I understand that. I just think -

      THE COURT: See, I'm not convinced that he started using illegal drugs after he was shot. I'm not convinced of that. I'm not even convinced that he wasn't under the influence at the time he was shot. That doesn't excuse anybody shooting at him, I'm not saying that.

      MR. UDDYBACK: Right.

      THE COURT: But, his testimony and evidence may be inherently incredible if he really is a person who uses drugs all the time, and if he was accidently [sic] shot, somebody else was intending to shoot someone else and shot him; and he doesn't know who shot him. That's all I'm saying.

      MR. UDDYBACK: And I appreciate that. I'm just saying -

      THE COURT: Okay. I haven't decided the motion yet but I do want to take a recess and have this man tested. Now, how do we do that and how long is it going to take.

      MR. UDDYBACK: I don't know, your Honor, but I think it's a – conclusion. Out of his own words he explained to the jury he gets high everyday. So, I don't think it's of any moment to have him tested, your Honor.

      THE COURT: So you want the defense attorney to argue that if he want's [sic] to?

      MR. UDDYBACK: He's free to. He says it and we make no – we don't want to hide anything from it.

      THE COURT: Okay. Okay. All right. I'll take the motion under advisement. We're going to bring the jury in, the prosecution is going to argue, defense is going to argue and I'm going to charge this jury and this case is done with. Okay, let's bring the jury in.

*Id*. The trial court did not mention the order to test the complainant again until after the jury returned the verdict of guilty, when the trial court asked for the results of the test and discovered that the complainant had been released. The trial court insisted that the order to test the complainant was not withdrawn; the prosecutor insisted that it was. *Id*. at 98-102.

      THE COURT: I had order[ed] before, I think it was even [before] closing arguments, that the complainant be tested. I really meant for the complainant to be tested. I don't know how he was released here without being tested, but before I left for lunch I asked the - told the police officer that I wanted the complainant to be brought back down here today to be tested. I think that in light of the jury's verdict, which I'm not really very sure about yet, we're going to have to have that complainant tested. So, he's going to have to be apprehended and brought back down here.

      MR. UDDYBACK: Well, your Honor, when I went upstairs to take care of

Shulman's matter which was the Crosby case I left away with the impression that we had come up with the agreement that since he testified that he gets high everyday that would suffice to leave for the jury that either he was high today or maybe he wasn't high, and I thought we made a long record.

THE COURT: But that's why I wanted him tested so we would know for sure.

MR. UDDYBACK: But, the problem being, and I don't think it came across anybody's mind is, number one, what jurisdiction do we have to have him tested since he was not under any order not to come to court high. We don't know if he was high. There was nothing to suggest that he was high, and to bring him back later on, could we make it an offer of proof, open the proofs up and show the jury that he was high? I don't know if that could have been the case so I don't understand where we could use that information to help us decide this case cause I think it was clear that people come in all day long who come from different walks of life that we disagree with and they testify and it's for the trier of fact.

THE COURT: I understand. I understand. This Court has jurisdiction over anybody who's in this courtroom, and if the Court issues an order, that has to be complied with or appealed. Those are the only two options. There is no option to ignore the Court order.

MR. UDDYBACK: I don't think that was the case, your Honor. I think what happened was –

THE COURT: I don't want to spend a whole bunch of time on it. I want the complainant brought back down here today and I want him tested today, and that's a Court order.

MR. UDDYBACK: Okay. Now, you're directing that to the Detroit police or the deputies, your Honor? Because it has to be written so they can effectuate it as a Bench warrant of some sort and they've got to have some reason because they're under superintendent control of the Detroit police because they've made a whole lot of arrest without a whole lot of validity to why they're doing what they do. So, they need a Bench warrant suggesting why he's going to be apprehended, your Honor, so we can forward it to the – I can't have him arrested.

THE COURT: For failure of the Detroit Police Department to comply – and the prosecutor's office, too, to comply with the Court's order. I mean it's contempt of court not to follow a Court order.

MR. UDDYBACK: Well, that's what we need to find out. Who did you direct it to?

THE COURT: And I didn't release that man. I didn't release that complainant. There was a request for and I didn't do it, and then after I didn't release him I ordered that he be tested.

MR. UDDYBACK: Right, and that's where we're back to square – who – if you write out the order, your Honor, we'll have it done.

THE COURT: Okay. I'm instructing the prosecutor's office to follow through on it.

MR. UDDYBACK: I'm saying, your Honor, it's not the People. You have

11

to direct it to the Detroit police, that's how I'm suggesting. I don't have any arresting powers except if I know an offense have been created – that's really between the Court and the police department.

THE COURT: He was not released. He was not released form that subpoena. As far as I'm concerned he's still under that subpoena because I never released him from that subpoena so he has to be brought back to court, and that's the prosecutor's office and the Detroit Police Department's function.

MR. UDDYBACK: Okay. And I'll present it to my office, your Honor, for review and see if they can comply with the order or not.

THE COURT: All right. I'm going to give you a date for taking this motion under advisement decision.

MR. UDDYBACK: Your Honor, and your advisement is not based on credibility, it's based on some law, legal?

THE COURT: There is law. There is law. There is case law that if testimony is inherently incredible, and that's what I've got to determine, whether it was inherently incredible, okay. Then the Court, the Judge, can make a decision on a directed verdict motion based on that. If I don't find that it's inherently incredible, and it's all re-viewable, then I'll deny the motion and sentence the defendant. So, January 21st I guess. And, I said one of those things that I wanted to review was whether [complainant] was under the influence of illegal narcotics at the time that he testified today. I very specifically said that.

*Id.* The parties stipulated that defendant had been convicted of a prior felony and had not had his right to carry a weapon restored. *Id.* at 60.

MR. UDDYBACK: We have a stipulation to the fact that the individual has been, that is the defendant has been convicted of a prior felony, that there was a handgun used in the shooting.

MR. COLEMAN: We'll stipulate to that prior conviction on the part of my client, your Honor.

THE COURT: All right, and that the defendant had not restored his right to carry a weapon?

MR. COLEMAN: That's right, Judge.

*Id.* at 60; *see also, id.* at 90 (jury instructed on stipulations). The jury returned a verdict of guilty on all three counts. *Id.* at 90-91.

On February 12, 2004, Petitioner was sentenced to concurrent terms of imprisonment of 9-15 years for the assault with intent to murder conviction and 2-5 years for the felon in possession conviction, as well as a preceding and consecutive two-year term of imprisonment for the felony

12

firearm conviction. The trial court denied the motion for directed verdict at sentencing. Sent. Tr., at 3-4.

> THE COURT: ... I did hold [the motion] in abeyance and ... I decided that all of the issues that I had concerns about [were] concerns related to the credibility. The main one was the credibility of the complaining witness and that is not an issue I can decide on a Motion for Directed Verdict. So the Prosecution did present sufficient evidence on each of the elements on each of the counts for the issue to go to the trier of fact. It went to the trier of fact and they made a decision as to who to believe and who not to believe. So based on that and taking the evidence in the light most favorable to the Prosecution, the Court will deny the Motion for Directed Verdict.

*Id*. At sentencing, petitioner made a motion for a new trial, which was denied. *Id*. at 4.

C.      *Standard of Review*

Because Petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

13

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

14

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Sufficiency of Evidence (Claims I and II)*

Petitioner contends that the prosecution presented insufficient evidence at his trial to support his convictions. Specifically, he argues that there was insufficient evidence to support assault with intent to commit murder, felon in possession of a firearm, or possession of a firearm during commission of a felony under Michigan law because of defects in the testimony of DeShawn Jefferson and stipulations into which he entered. Specifically, petitioner argues that the testimony of DeShawn Jefferson was inherently incredible. Petitioner also argues that the testimony of DeShawn Jefferson was insufficient to support an inference that petitioner had an intent to kill him, but rather at most that petitioner acted recklessly or with intent to do harm less than murder. Finally, petitioner argues that the stipulation to petitioner's prior felony conviction was not sufficient with regard to his felon in possession of a firearm and felony-firearm convictions because the stipulation did not specify the particular underlying felony. *See* Pet. at 9-10.

Because in reviewing these claims, the Michigan Court of Appeals did not contradict or

unreasonably apply the United States Supreme Court's *Jackson* jurisprudence, the judgment of the Michigan Court of Appeals is entitled to deference under the AEDPA. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

      1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). When reviewing a state court's determination that the evidence was sufficient to support a habeas petitioner's conviction, the  federal habeas court must apply "two layers of deference."  *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009).

First, the federal habeas court, viewing the trial testimony and exhibits in the light most favorable to the prosecution, considers whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brown*, 567 F.3d at 205; *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard ... has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1997); *see also Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, a federal habeas court reviews a state court's sufficiency determination with explicit reference to the substantive elements of the criminal offense as defined by state law. *See Jackson*, 443 U.S. at 324 n. 16; *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008); *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir.2006).

16

Second, the AEDPA requires that even if a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, the federal habeas court must defer to the state appellate court's determination regarding the sufficiency of the evidence "as long as it is not unreasonable." *Brown*, 567 F.3d at 205. Specifically, under the AEDPA, the state court's determination will only be disturbed if it was "objectively unreasonable." *Wiggins*, 539 U.S. at 520-21; *see also*, *Williams*, 529 U.S. at 409; 28 U.S.C. § 2254(d).

Generally, challenges to the credibility or weight of evidence are simply not considered in a federal habeas corpus action; a reviewing court should not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). In evaluating an insufficiency of evidence claim, the reviewing court does not need not be convinced of guilt beyond reasonable doubt. *Brown*, 567 F.3d at 205; *Neal v. Morris*, 972 F.2d 675, 677 (6th Cir. 1992); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995). A jury's credibility determination is entitled to "special deference." *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir.1985).

2.    *Analysis*

For the reasons set forth below, the Michigan Court of Appeals did not contradict or unreasonably apply *Jackson* when it concluded that the prosecution presented sufficient evidence to support petitioner's convictions for assault with intent to commit murder, felon in possession of a firearm, or possession of a firearm during commission of a felony under Michigan law. The Michigan Court of Appeals addressed petitioner's claims that the evidence was insufficient to support his convictions under the following standard.

In reviewing the sufficiency of the evidence in a criminal case, this Court must review the record de novo and, viewing both direct and circumstantial evidence in

17

a light most favorable to the prosecution, determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. Circumstantial evidence and reasonable inferences drawn therefrom are sufficient to prove the elements of a crime. It is for the trier of fact to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. We must resolve all conflicts in the evidence in favor of the prosecution.

*Mabins*, 2006 WL 1716724, at *1 (citations omitted).

### a. *Assault with Intent to Commit Murder*

Under Michigan law, the elements of assault with intent to commit murder are (1) an assault (2) with actual intent to kill, (3) which if successful would make the killing murder. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). The intent to inflict great bodily harm, or a wanton and willful disregard of the likelihood that the natural tendency of an action is to cause death or great bodily harm is insufficient to support a conviction. *People v. Taylor*, 375 N.W.2d 1, 7 (Mich. 1985). The intent to kill need not be proved by direct, positive, or independent evidence, and trier of fact may draw reasonable inferences from facts and evidence in determining the existence of an intent to kill. *Id.* The use of a lethal weapon will support an inference of the intent to kill. *People v. Ray*, 224 N.W.2d 735 (Mich. 1974). Petitioner contends that the testimony of DeShawn Jefferson was not sufficient to establish that he "exhibited a clear and specific intent to *kill*, that he was shooting to kill, or even to hit, any person at all." Pet. at 9. Accordingly, petitioner contends that the evidence was insufficient to support a conviction for intent to commit murder.

The Michigan Court of Appeals concluded, as a matter of Michigan law, that DeShawn Jefferson provided sufficient evidence to support petitioner's state conviction for assault with intent to commit murder.

The intent to kill may be proven by inference from any facts in evidence, including proof of the victim's injuries, and minimal circumstantial evidence is sufficient.

18

> The victim, DeShawn Jefferson, testified that he temporarily stopped his car because a man was standing in the road in front of him. Defendant then came out of or from behind a house to the rear of Jefferson's car and opened fire, striking the vehicle several times and striking Jefferson in the shoulder. Defendant contends that this evidence was insufficient to prove that he harbored an intent to kill. We disagree. The intentional discharge of a firearm at someone within range, under circumstances that did not justify, excuse, or mitigate the crime, is sufficient to prove assault with intent to commit murder.

*Mabins*, 2006 WL 1716724, at *1 (citations omitted). The trial transcript, taken in the light most favorable to the prosecution, does include Jefferson's testimony that petitioner intentionally emptied a handgun's magazine into the back of complainant's car. *See* Trial Tr., Vol. II, at 22-24. Petitioner's act of firing a gun at Jefferson multiple times is sufficient evidence from which the finder of fact could infer beyond a reasonable doubt that petitioner intended to kill Jefferson. *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608 (E.D. Mich. 2002) (Steeh, J.); *see also, People v. Ritsema*, 105 Mich. App. 602, 609, 307 N.W.2d 380, 383 (1981); *People v. Johnson*, 54 Mich. App. 303, 304, 220 N.W.2d 705, 507 (1974). Further, the fact that the evidence may have supported another version of events - that petitioner's intent was to commit some harm less than murder - is irrelevant; the prosecution's evidence need not rule out every other version of events in order to be sufficient. *See Jackson*, 433 U.S. at 326. Accordingly, the Michigan Court of Appeals's determination that a rational trier of fact could have found, based on the testimony of DeShawn Jefferson, that each of the elements of assault with intent to commit murder under Michigan law was proved beyond a reasonable doubt was not contrary to or an unreasonable application of the *Jackson* standard. The Court should conclude that the judgment of the Michigan Court of Appeals is entitled to deference. *See* 28 U.S.C. § 2254(d)(1); *Brown*, 567 F.3d at 205.

### b. *Felon in Possession of a Firearm*

Under Michigan law, the elements of felon in possession of a firearm are (1) that defendant

possessed a weapon, (2) after being convicted of a specified felony. MICH. COMP. LAWS § 750.224f.

Petitioner contends that the stipulation obtained from petitioner's counsel that petitioner was

convicted of a prior felony was insufficient to support a conviction for felon in possession because

it was a stipulation to a prior felony in general and not a stipulation to a "specified" felony under

MICH. COMP. LAWS § 750.224f. Petitioner does concede that at least one of his prior felonies  –

possession of less than 25 grams of a controlled substance, MICH. COMP. LAWS § 333.7403(2)(a)(v)

– was a "specified" felony under MICH. COMP. LAWS § 750.224f. *See* Pet. at 13.

The Michigan Court of Appeals concluded, as a matter of Michigan law, that the stipulation

in combination with the testimony of DeShawn Jefferson constituted sufficient evidence to support

petitioner's state conviction for the charge of felon in possession of a firearm..

> The prosecutor charged that defendant had been convicted of a prior specified felony, possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(v), and that defendant's rights to possess a firearm had not been restored. Before presenting evidence regarding this conviction, the prosecutor announced that the parties had agreed to stipulate, "defendant has been convicted of a prior felony." Defense counsel agreed, stating, "We'll stipulate to that prior conviction on the part of my client, your Honor." On the trial court's further inquiry, defense counsel also stipulated that defendant's right to carry a firearm had not been restored. In context, we find the parties' stipulation sufficient to establish that defendant had been convicted of a specified felony, MCL 750.224f(6)(ii), and that defendant's right to possess or use a firearm had not been restored, MCL 28.424. Defendant was prohibited from possessing or using a firearm regardless of when his prior specified felony conviction occurred. MCL 750.224f(2). Because the prosecutor also presented sufficient evidence to permit a rational jury to find beyond a reasonable doubt that defendant possessed a firearm, the evidence was insufficient [sic] to sustain defendant's conviction for the charge of felon in possession of a firearm.

*Mabins*, 2006 WL 1716724, at *2 (some citations omitted). The context in which the stipulation was

made at petitioner's trial indicates that it was to a "specified felony" under MICH. COMP. LAWS §

750.224f, even though petitioner's counsel did not use those exact words.  *See* Trial Tr., Vol. II, at

60. The Michigan Court of Appeals's determination that a rational trier of fact could have found,

based on the testimony of DeShawn Jefferson and the stipulation between the parties at trial, that each of the elements of felon in possession of a firearm under Michigan law was proved beyond a reasonable doubt was not contrary to or unreasonable under *Jackson*. Accordingly, the judgment of the Michigan Court of Appeals is entitled to deference. *See* 28 U.S.C. § 2254(d)(1); *Brown*, 567 F.3d at 205.

c. *Possession of a Firearm during Commission of a Felony*

Under Michigan law, "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except [under certain sections]," is guilty of possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. Petitioner contends that, for the reasons argued above, the evidence was insufficient to support a conviction for an underlying felony, so the evidence was insufficient to support his conviction for possession of a firearm during commission of a felony.

The Michigan Court of Appeals concluded, as a matter of Michigan law, that there was sufficient evidence to support Petitioner's state conviction for possession of a firearm during commission of a felony.

> Because Jefferson testified that defendant was armed with a gun at the time he committed the assault offense and the assault is not an excluded felony under the felony-firearm statute, the evidence was sufficient to sustain defendant's felony-firearm conviction.

*Mabins*, 2006 WL 1716724, at *1 (citations omitted). The Michigan Court of Appeals's determination that a rational trier of fact could have found, based on the evidence before the jury at petitioner's trial, that possession of a firearm during commission of a felony under Michigan law was proved beyond a reasonable doubt follows simply from that court's determinations regarding petitioner's other two counts. The judgment of the Michigan Court of Appeals was not contrary to

or unreasonable under *Jackson*, and is entitled to deference. *See* 28 U.S.C. § 2254(d)(1); *Brown*,
567 F.3d at 205.

In the final analysis, Jefferson did provide at least some evidence on each of the elements
to which petitioner did not stipulate and which were necessary for the jury to find petitioner guilty.
Most importantly, Jefferson described the shooting and was able to identify petitioner as the shooter
while on the stand. *See* Trial Tr., Vol. II, at 21-22. In other words, it cannot be said that the jury
reached a verdict that was without any evidentiary support whatsoever. While the jury's verdict
surprised even the trial court, *see id*. at 98 (trial court "not really very sure about [the jury's verdict]
yet"), the temptation to disturb a jury's verdict because the reviewing court would make a different
witness credibility determination than the jury must be resisted. *See United States v. Wynn*, 987 F.2d
354, 358 (6th Cir.1993) (Credibility is "primarily for the jury to decide."); *Brown*, 752 F.2d at 1147
(The "jury's resolution of questions of credibility and demeanor [is] entitled to 'special deference.'")
(citations omitted). Because a review of a jury's credibility determination lies outside the scope of
federal habeas corpus review, and because the Michigan Court of Appeals did not contradict or
unreasonably apply *Jackson* when it concluded that enough evidence was provided at petitioner's
trial for a rational jury to find each of the elements necessary for petitioner's convictions proved
beyond a reasonable doubt under Michigan law, petitioner is not entitled to relief on his claims that
the evidence was insufficient.

E.    *Suppression of Evidence (Claim III)*

Petitioner next contends that his constitutional right to due process was violated when the
prosecutor suppressed, lost, or destroyed a statement complainant DeShawn Jefferson made on the
day of the shooting. The missing statement has not been provided to this Court. Petitioner contends
that the statement is exculpatory because in the statement Jefferson names someone other than

petitioner as the shooter. *See* Pet. at 17.  Respondent contends that because the entire statement has not been brought forward, the statement falls into the "potentially exculpatory" category of evidence described in *Youngblood*, and accordingly that petitioner is required to show that the authorities acted in bad faith. Respondent also contends that the missing statement does not differ in substance from the investigative subpoena, which was provided to petitioner's counsel, and so the harm to petitioner at trial was *de minimis*. *See* Resp. at 12. While the Michigan Court of Appeals applied the incorrect standard when reviewing petitioner's claim, the Court should nonetheless conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also, Strickler*, 527 U.S. at 281-82; *Moore v. Illinois*, 408 US. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

The *Brady* rule extends to evidence which is not suppressed, but is lost or destroyed. *See California v. Trombetta*, 467 U.S. 479, 489 (1984). This rule, however, applies only to material exculpatory evidence, that is, evidence which "both possess[es] an exculpatory value that was

23

apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89. However, "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1998). In a case involving potentially useful evidence, the defendant must "show bad faith on the part of police." *Id.*; *see also, Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (per curiam).

The Sixth Circuit has explained that *Trombetta* and *Youngblood* establish "[s]eparate tests . . . to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, versus cases where 'potentially useful' evidence is not accessible." *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001).

Where the *Youngblood* bad faith requirement applies, "[t]he presence or absence of bad faith by the [government] for the purposes of the Due Process Clause must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n.*. Thus, "where the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied." *Wright*, 260 F.3d at 571. Further, the requirement that a defendant show bad faith is not eliminated by the existence of a pending discovery request for evidence, *see Fisher*, 540 U.S. at 548, nor does it depend on "the centrality of the contested evidence to the prosecution's case or the defendant's defense[.]" *Id.* at 549.

2.    *Analysis*

Even though the Michigan Court of Appeals applied the incorrect standard when reviewing

24

petitioner's claim, petitioner is not entitled to relief because he has not successfully established a constitutional violation under *Brady*.

The Michigan Court of Appeals reviewed Petitioner's suppression of evidence claim under a state law standard requiring a showing of bad faith in the case of "potentially exculpatory" evidence.

> It is generally preferable that the police keep all evidence until the criminal prosecution is concluded without concern for its value at trial. However, the failure to preserve evidence that may have exonerated the defendant does not constitute a denial of due process unless the defendant shows that the police acted in bad faith or intended to deprive the defendant of evidence. Defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith.

> In this case, defendant admits that the unpreserved statement was only potentially exculpatory and has not shown that the police acted in bad faith when they failed to preserve the statement. Therefore, he has not met his burden of proving a right to relief. Further, the only alleged exculpatory information in the statement was that Jefferson identified someone other than defendant as his assailant and Jefferson was cross-examined on this alleged discrepancy. Accordingly, we conclude that defendant has failed to establish a due process violation.

*Mabins*, 2006 WL 1716724, at *2-3 (citations and quotation marks omitted).

The *Youngblood* standard requiring a showing of bad faith is applicable where missing evidence is concerned "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 58. In other words, evidence in the *Youngblood* category has no objective exculpatory content at the time of its loss or destruction; all that can be said about the suppressed evidence is that it could have acquired exculpatory content if, instead of being lost or destroyed, it had been subjected to tests. *See Wright*, 260 F.3d at 571 (distinguishing between evidence that had "exculpatory value that was apparent before the evidence was destroyed" and evidence that was only "potentially useful" because it could have been tested); *cf. United States v. Bakhtiar*, 994 F.2d 970, 976-97 (2d Cir. 1993) (distinguishing

between *Youngblood* evidence, which "had never been tested for determination of its exculpatory or inculpatory value," and evidence that "did not need to be tested to determine its value"); *United States v. Gomez*, 191 F.3d 1214, 1218 (10th Cir. 1999) (distinguishing between evidence that had "exculpatory significance that would have been apparent before its destruction" and *Youngblood* evidence, which was only "potentially useful" to the defense) (citations and quotation marks omitted) In *Youngblood*, biological evidence collected from a rape victim was negligently destroyed by the government before it could be tested to determine whether it could have originated from the criminal defendant. *See Youngblood*, 488 U.S. at 58. At the time it was destroyed, the evidence by itself could not inculpate or exculpate Youngblood; it was impossible to know after its destruction whether the evidence could have acquired exculpatory or inculpatory content because it was never tested.

In this case, the statement of DeShawn Jefferson is simply not evidence in the *Youngblood* category, or evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id*. at 58. For reasons elaborated below, the missing statement did not need to be subjected to tests to determine its exculpatory value. *See Bakhtiar*, 994 F.2d at 976-97. Further, the exculpatory value of the missing statement would have been apparent to authorities. *See Gomez*, 191 F.3d at 1218. Whatever differences may exist between delineations by federal courts of the precise outer boundaries of the *Youngblood* bad faith requirement, it is clear that the loss of evidence that had apparent exculpatory value before it was lost violates due process if the evidence was material regardless of whether the government acted in bad faith. *See Trombetta*, 467 U.S. at 488; *Youngblood*, 488 U.S. at 57. Because Jefferson's statement was exculpatory and favorable to petitioner at the time that it went missing, petitioner's claim may be meritorious even if he fails to show bad faith on the part of the authorities.

26

Accordingly, the Michigan Court of Appeals requirement that petitioner show bad faith was "objectively unreasonable" for the purposes of federal habeas review. *See Wiggins*, 539 U.S. at 520-21. This Court should undertake its own analysis of petitioner's claim under *Brady*.

With regard to the first *Brady* factor, the statement of DeShawn Jefferson on the day of the shooting was not provided to petitioner's counsel, but petitioner has not shown that the substance of the statement was not available from another source. While the investigative subpoena and missing statement have not been provided to this Court, the identification of the shooter made by DeShawn Jefferson in the missing statement appears to have been included in the investigative subpoena. *See* Trial Tr., Vol. II, at 3-5. While the prosecutor did note that the missing statement is not reproduced in full in the investigative subpoena, which was provided to petitioner's counsel, the prosecutor indicated that the essential identification information was reproduced. *See id.* Petitioner bears the burden of establishing each of the *Brady* factors, *see Carter*, 218 F.3d at 601, and petitioner has not identified any exculpatory information contained in the missing statement and not contained in the investigative subpoena. Accordingly, the first *Brady* factor is not satisfied.

With regard to the second *Brady* factor, the missing statement did include evidence that was favorable to the accused. For example, DeShawn Jefferson testified at the preliminary hearing, "When I first got shot I had gave [the police] a description of him but not him but another guy that looks just like him." Prelim. Tr., at 17. In other words, in the missing statement, DeShawn Jefferson did not identify petitioner by name, even though the two men appear to have been acquaintances or at least to have traveled in the same circles. Instead, Jefferson's testimony indicates that in the missing statement he gave a brief physical description of the shooter and gave only the shooter's *nom de guerre*, "Antoine." *See* Trial Tr., Vol. II, at 40. At trial, Jefferson was reluctant to identify petitioner as "Antoine." *Id.* ("I don't know if it was his name or not. I really don't care if it's his

name. It could be his name, it could not be.") Thus, the information contained in the statement was exculpatory insofar as it related to the critical issue of the identification of petitioner as the guilty party. *See Jackson v. Wainwright*, 390 F.2d 288, 289 (5th Cir. 1968). Further, the missing statement had impeachment value in light of Jefferson's identification testimony at trial and accordingly is considered "favorable to the accused" under *Brady*. *See Strickler*, 527 U.S. at 281-82.

With regard to the third *Brady* factor, petitioner must show that the suppressed evidence was material. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A consideration of this factor is made difficult by the paucity of evidence against petitioner. The only witness at petitioner's trial was a nineteen-year-old shooting victim who gave implausible, sometimes incoherent testimony, and who the trial court indicated may have been under the influence of narcotics while on the stand. *See* Trial Tr., Vol. II, at 63-64. Meanwhile, DeShawn Jefferson was released by the prosecutor before a court-ordered drug test could be administered. *Id*. at 98-102. Jefferson was agitated and uncooperative on cross-examination. *See, e.g., id.* at 38. Under these circumstances, even the slightest diminution of Jefferson's credibility may have tipped the balance in petitioner's favor in the jury room. Further, the missing statement included critical identification information. *See id.* at 4 (prosecutor admitting that "[t]his case rises and falls . . . on the complainant being able to identify the defendant"). However, because petitioner has not shown that the information contained in the missing statement was any different from the information contained in the investigative subpoena, he cannot show that the result of the proceeding would have been different had the statement been provided to his counsel. Further, impeachment evidence, "even that which tends to further undermine the credibility

28

of the key [state] witness whose credibility has already been shaken due to extensive cross-examination, does not create a reasonable doubt that did not otherwise exist where that evidence is cumulative or collateral." *United States v. Shelton*, 588 F.2d 1242, 1248 (9th Cir. 1978). Thus, petitioner cannot show that the missing statement was "material" under Brady, because it would have been cumulative of testimony already presented at trial. *See Boling v. Stewart*, 53 F. App'x 423, 424 (9th Cir. 2002); *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir. 1996). Accordingly, the loss, destruction, or suppression of Jefferson's initial statement to the police is not material under *Brady.*

While the missing statement contains evidence favorable to petitioner under *Brady*, and while its loss before petitioner's trial is extraordinary, petitioner has failed to establish a constitutional violation because he has failed to show that the exculpatory information was material and not available to his counsel in another form. Accordingly, even though the Michigan Court of Appeals applied the incorrect standard when it reviewed petitioner's suppression of evidence claim, this Court should not grant petitioner relief on his suppression of evidence claim.

F.      *Ineffective Assistance of Counsel (Claims III and IV)*

Petitioner next contends that his counsel rendered constitutionally ineffective assistance at trial. Specifically, petitioner contends that counsel was ineffective for (a) failing to move for dismissal based on evidence that was suppressed and (b) failing to move for a mistrial based on complainant's conduct. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*.

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    *Analysis*

Because the Michigan Court of Appeals did not contradict or unreasonably apply the *Strickland* standard when it concluded that the motions petitioner wishes his counsel had made would have been futile, petitioner is not entitled to relief.

a. *Dismissal or Instructions Based on Suppression of Evidence*

30

Petitioner contends that because his trial counsel did not move for a dismissal or for a missing evidence instruction based on the missing statement of DeShawn Jefferson, his counsel was constitutionally ineffective. *See* Pet. at 21. The Michigan Court of Appeals concluded that a motion for dismissal or instructions based on the missing statement of DeShawn Jefferson would have been futile, and consequently that counsel's failure to make such a motion was not prejudicial under *Strickland*.

> Because defendant failed to raise this claim below in a motion for a new trial or an evidentiary hearing, review is limited to the existing record. To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the factfinder would not have convicted the defendant.
>
> Defendant contends that trial counsel was ineffective because he failed to move for dismissal or request an adverse instruction based on the missing witness statement. As noted above, defendant failed to establish a denial of due process. Trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile.
>
> Where the prosecution acts in bad faith, an adverse inference instruction . . . is warranted. Here, defendant has not met his burden of showing that prosecution acted in bad faith. Further, it is unlikely that counsel's failure to request the instruction affected the outcome of the trial because the inference is permissive, not mandatory, and thus the jury was not required to draw such an inference.

*Mabins*, 2006 WL 1716724 at *3 (citations and quotation marks omitted). While the Michigan Court of Appeals did apply an incorrect standard when it determined that petitioner had failed to establish a due process violation based on the missing witness statement, petitioner would not have been able to establish a due process violation under the correct *Brady* standard. *See* discussion *supra* Part II.E.1-2. Petitioner's counsel cannot be deemed ineffective for failing to take an action that would have been futile. *See*, *e.g.*, *Lee v. Ricks*, 388 F.Supp.2d 141, 157 (W.D.N.Y. 2005) (counsel not ineffective for failing to request unwarranted instruction); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (counsel not ineffective for failing to raise meritless objection). Because petitioner's

31

desired motions to dismiss and for instructions would have been futile, failure to make these motions could not have resulted in prejudice. *See Strickland*, 466 U.S. at 695. Accordingly, petitioner is not entitled to relief on this claim.

### b. *Mistrial Based on Complainant's Conduct*

Petitioner contends that because his trial counsel did not move for a mistrial following the complainant's misbehavior on the witness stand, his trial counsel was constitutionally ineffective. Pet. at 26. The Michigan Court of Appeals concluded that a motion for a mistrial based on the conduct of DeShawn Jefferson would have been futile.

> A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial. Absent evidence that the prosecutor conspired with or encouraged the witness to give the testimony at issue, an unresponsive or volunteered answer to a proper question is not a basis for a mistrial unless the alleged error is so egregious that its prejudicial effect can be cured in no other way. Similarly, an unsolicited outburst of a witness is not grounds for a mistrial unless the comment is so egregious that the prejudicial effect cannot be cured.

> Defendant has not shown that the prosecutor knew that Jefferson planned to volunteer the information at issue or that he solicited the volunteered remarks offered by Jefferson. Further, Jefferson's unresponsive answers did not include any information prejudicial to defendant. At most, he called his own credibility into question by being uncooperative. Indeed, defense counsel argued that Jefferson's testimony was "incredible" and could not be trusted or believed. Because Jefferson's testimony was not such as to deprive defendant of a fair and impartial trial, defense counsel was not ineffective for failing to request a mistrial.

*Mabins*, 2006 WL 1716724 at *3-4 (citations and quotation marks omitted). The Michigan Court of Appeals determination that a mistrial would not have been granted is an expression of state law, and for the purposes of analyzing petitioner's ineffective assistance of counsel claim is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999); *see generally, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action.").

32

Because petitioner's desired motion for a mistrial based on Jefferson's conduct would have been futile, it cannot constitute an error without which a reasonable probability exists that the jury would have had a reasonable doubt respecting petitioner's guilt. *See Strickland*, 466 U.S. at 695; *see also* discussion *supra* Part II.D.1 (state court determinations of weight and credibility of evidence not proper subjects of federal habeas review). The Michigan Court of Appeals did not contradict or unreasonably apply the *Strickland* standard, and accordingly petitioner is not entitled to relief on this claim.

E.      *Conclusion*

        In view of the foregoing, the Court should  deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

        Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by

33

motion and order such page limit is extended by the Court.  The response shall address specifically,

and in the same order raised, each issue contained within the objections.



                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 7/21/2009

                                        ┌─────────────────────────────────────┐
                                        │ The undersigned certifies that a copy of the foregoing │
                                        │ order was served on the attorneys of record    by │
                                        │ electronic means or U.S. Mail on July 21, 2009. │
                                        │                                         │
                                        │                    s/Eddrey Butts       │
                                        │                    Case Manager         │
                                        └─────────────────────────────────────┘